Booth, Judge,
delivered the opinion of the court.
The petition in this case raises a jurisdictional issue and is here on defendants’ demurrer. The plaintiff alleges a loss of considerable personal property on June 10, 1866, at the hands of Black Hawk’s Band of Ute Indians, the habitat of the Indian tribe being in the then Territory of Utah. A claim for this loss was filed with the Secretary of the Interior on April 10, 1899, and subsequently a petition was duly filed in this court under the Indian Depredation statute of March 3,1891, 26 Stat., 851.
This court in Herring's case, 32 C. Cls., 536, found Black Hawk’s Band of Ute Indians to have been in a state of hostility on the date named in the above petition, and following this decision the plaintiff’s then pending case was dismissed.
The act of March 3, 1891, commonly styled the Indian Depredation statute, is as follows:
“ That in addition to the jurisdiction which now is, or may hereafter be, conferred upon the Court of Claims, said court shall have and possess jurisdiction and authority to inquire into and finally adjudicate, in the manner provided in this act, all claims of the following classes, namely:
“ First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.
“ Second. Such jurisdiction shall also extend to all cases which have been examined and allowed by the Interior Department and also to such cases as were authorized to be examined under the act of Congress making appropriations *327 for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and under subsequent acts, subject, however, to the limitations hereinafter provided.
“ Third; All just offsets and counterclaims to any claim of either of the preceding classes which may be before such court for determination.
“ Sec. 2. That all questions of limitations as to time and manner of presenting claims are hereby waived, and no claim shall be excluded from the jurisdiction of the court because not heretofore presented to the Secretary of the Interior or other officer or department of the Government: Provided, That no claim accruing prior to July first, eighteen hundred and sixty-five, shall be considered by the court unless the claim shall be allowed or has been or is pending, prior to the passage of this act, before the Secretary of the Interior or the Congress of the United States, or before any superintendent, agent, subagent, or commissioner, authorized under any act of Congress to inquire into such claims; but no case shall be considered pending unless evidence has been presented therein: And provided further, That all claims existing at the time of the taking effect of this act shall be presented to the court by petition, as hereinafter provided, within three years after the passage hereof, or shall be thereafter forever barred : And provided further, That no suit or proceeding shall be allowed under this act for any depredation which shall be committeed after the passage thereof. * * * 55
On January 11, 1915, 38 Stat., 791, Congress amended the Indian Depredation statute by the following enactment:
“That the first section of paragraph one of an act entitled ‘An act to provide for the adjudication and payment of claims arising from Indian depredations,’ approved March third, eighteen hundred and ninety-one, be, and the same is hereby, amended so as to read as follows:
“ First. That in all claims for property of citizens or inhabitants of the United States, except the claims of Indians heretofore or now in tribal relations, taken or destroyed by Indians belonging to any tribe in amity with and subject to the jurisdiction of the United States without just cause or provocation on the part- of the owner or agent in charge, and not returned or paid for, and in all adjudications under said act as now amended, the alienage of the claimant shall not *328 be a defense to said claim: Provided, That the privileges of this act shall not extend to any person whose property at the time of its taking was unlawfully within the Indian country: Provided further, That all cases heretofore filed under said act of March third, eighteen hundred and ninety-one, and which have been dismissed by the court for want of proof of the citizenship of the claimant or alienage shall be reinstated and readjudicated in accordance with the provisions of this act: Provided further, That nothing in this act shall be construed to authorize the presentation of any other claims than those upon which suit has heretofore been brought in the Court of Claims: Provided further, That all acts and parts of acts in so far as they conflict with the provisions of this act are hereby repealed.”
On September 2, 1917, the present petition was filed, the allegations differing from the prior petition only with respect to the question of amity, the contention being that the omission from the act of January 11,1915, supra, of the word “band” was intentionally done to enlarge the jurisdiction of the court and extend redress to all inhabitants wherein the loss was occasioned by any “ tribe ” of Indians in amity with the United States.
The development of legislation extending remedies and redress to the early western settlers of the country for Indian depredations upon their property was decidedly gradual and evinces a legislative intent to guard both the right and the remedy by specific limitations. Commencing in 1796,1 Stat., 472, and extending without material change to February 28, 1839, is found four statutes, in each of which there is an express reservation obviously intended to restrain the operation of the law and so circumscribe it that the Indians, or rather the Indian tribes themselves, should be penalized for the offense. The essential right of recompense for lost property has always been limited to thefts and depredations committed by friendly Indians, and any sort of mutual quarrel between the depredators and the depi-edated which constituted just cause or provocation for the crime was sufficient to bar both the right and remedy. The very nature of the claims seems to have exacted a scrutinizing care and evoked in every law several strict and imperative limitations. The *329 earlier legislation withheld jurisdiction from the courts to try the cases, the claimant in each instance being relegated to the simple procedure of preferring his claim to the superintendent of the Indian reservation and he in turn, if unable to procure its adjustment, transferring the controversy to the President of the United States, in each instance requiring the positive showing of the amity of the tribe and the peaceful relations of the parties. Act of March 3, 1799, 1 Stat., 747; act of March 30,1802, 2 Stat., 143.
The statute of June 30,1834, 4 Stat., 731, the trade and intercourse act, continued in effect the preceding laws, the only noticeable enlargement of the remedy being found in the section providing a method of proof. Tins statute contained a three-year limitation and directed an investigation by the Secretary of the Interior. The question of amity, as well as all other restrictions, were expressly retained.
The Congress on February 28, 1859, 11 Stat., 40, repealed all laws wherein the United States were held liable for Indian depredations and left the sufferers from such losses exclusively for indemnification out of the annuities of the Indian tribes, and this, despite the fact that in each of the earlier laws the inhabitants had been expressly guaranteed “ eventual indemnification.”
It was not until the passage of the statute of March 3, 1891, supra, granting jurisdiction to this court to hear and determine cases of this character, that any provision was made for their judicial determination. Section 2156, Revised Statutes, revived the ancient proceedings, but did not in any respect enlarge the scope of the right or remedy. The statute of 1891 is carefully drawn; it not only refers to the amity of the tribe as a prerequisite to recovery but introduces for the first time the amity of the “band.”. Not only was the hostility of the band or nation recognized but what is of more importance the right and remedy was expressly limited to citizens of the United States who had lost property through' Indian depredations, thereby excluding claims of mere inhabitants. The act of 1891 abounds in limitations; it gives forth numerous indications of legislative intent to restrict this court to narrow channels in the *330 adjudication of Indian claims and nowhere evidences a desire to place claims of this character upon the unrestricted basis of most all other claims against the United States. In 1915 practically all of the cases coming within the terms of the act of 1891 had been adjudicated, several hundred presented under the law had been dismissed for nonoitizenshif, and Congress was especially confronted with the fact of what upon its face seemed a manifest unjust discrimination between a citizen of the United States and an inhabitant thereof when each under similar circumstances had been the loser by reason of Indian depredations.
The history of Indian depredation legislation negatives a congressional intent to do more than extend the right of recovery to a specific class of claimants under certain clear and well-defined conditions. If the act of January 11, 1915, was intended to enlarge our jurisdiction and revive numerous cases dismissed because of the proven hostility of the band of Indians committing the depredations, it would not have so preeminently treated the one issue of citizenship alone. Every single provision of the amendatory statute which changes the existing law is so apparently intended to revive the remedy in behalf of inhabitants who had joeen excluded by the act of 1891 that it seems free from doubt that Congress was alone concerned with this particular subject. Why say in the statute, “the alienage of the claimant shall not be a defense to said claim”? Why provide specifically for the reinstatement of all cases heretofore dismissed for want of proof of citizenship or alienage, and make no mention whatever of the volume of cases dismissed for the hostility of the band of Indians committing the crime? Indeed, if we are now invested with jurisdiction to try and determine the present case, what logical reason can be assigned for limiting the same to suits heretofore brought in this court ? The petition herein is in effect a trial de novo, the filing of a new petition. Citizenship cases, on the contrary, are reinstatements automatically made in virtue of the statute; the records before the court were in practically all instances complete; nothing remained to be done but ascertain the question of judgment. If Congress intended after *331 the lapse of twenty-four years by the amendatory legislation of 1915 to open for litigants of this class a new and enlarged jurisdiction it would not have obscured the intent by several provisions and provisos which in themselves have no direct or remote relationship to the question of amity whatever. Congress was dealing with the question of citizenship and with this question exclusively and alone. It is hardly possible to conceive that at this late day, and in the face of all prior legislative disposition toward claims of this class, the Congress was enacting a law designed to remove a restriction solemnly placed in the statute when the court for the first time was granted jurisdiction to hear these cases. The history of the passage of the act through Congress, its consideration by the committee, clearly discloses that the one purpose to be accomplished was the removal of the bar of noncitizenship. In the report of the committee- (S. Rept. No. 720, 63d Cong., 2d sess.) the question of amity nowhere appears.
The intent of the legislature is the cardinal principle of statutory construction. If in the light of all the circumstances surrounding the passage of the law, including the whole history of the subject matter of legislation, the court can ascertain the legislative intent it must be effectuated in its judgment. We need indulge in no citations to sustain this assertion. If the statute is ambiguous and subject to construction, the primary duty of the court is to ascertain the intended purpose of the statute, the mischief it was intended to remedy, and from all the facts and circumstances surrounding its enactment seek to discover the legislative intent and construe it accordingly.
We believe that carrying the amendatory act with its changed provisions into the original statute of 1891 bars the right of the plaintiff to maintain this suit, the same not having been brought within the three-year period.
Defendants’ demurrer is sustained. Petition dismissed. It is so ordered.
Hat, Judge; DowNey, Judge; BaeNey, Judge; and Campbell, Chief Justice, concur.